Citation Nr: 1829861 
Decision Date: 09/06/18 Archive Date: 09/24/18

DOCKET NO. 10-09 244 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to service connection for a left shoulder disability.

2. Entitlement to service connection for a left heel disability.

3. Entitlement to service connection for a left ear hearing loss disability.


REPRESENTATION

Appellant represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

C. Orie, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Army from June 1972 to June 1974 and from October 2001 to November 2002. In addition, the Veteran had a period of active duty for special work (ADSW) pursuant to 32 U.S.C.A. § 505 (defined as active duty for training (ACDUTRA)) from September 2005 to October 2005. The Veteran also had National Guard service from 1982 to 1989 and from August 2000 to August 2006.

This matter comes before the Board of Veterans' Appeals (Board) from various rating decisions from the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas.

The Veteran testified at a video conference hearing before the undersigned Veterans Law Judge (VLJ) in June 2016. A transcript of the hearing is associated with the claims file.


FINDINGS OF FACT

1. A left ear hearing loss disability was not manifested in service or within one year of discharge from service, and there is no link between the left ear hearing loss disability and either active service or the service-connected right ear hearing loss disability.

2. Left shoulder and left heel abnormalities were not manifest during service or within one year of separation and are not attributable to service.


CONCLUSIONS OF LAW

1. A left ear hearing loss disability was not incurred in service or aggravated by service or the right ear hearing loss disability and may not be presumed to have been incurred therein. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309, 3.310, 3.385 (2017).

2. Left shoulder and left heel disabilities were not incurred in or aggravated by service. 38 U.S.C. § 1110 (2012); 38 C.F.R. § 3.303 (2017)


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

VA has procedural requirements pursuant to The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096(Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (2012)) which includes enhanced duties to notify and assist claimants for VA benefits. VA regulations implementing the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2017). A review of the record does not disclose that the Veteran and his representative have specifically raised any procedural issues to the AOJ or the Board, even when construing the Veteran's contentions liberally. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (Board required to address only those procedural arguments specifically raised by the Veteran, though at the same time giving the Veteran's pleadings a liberal construction). 

Service Connection

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty in the active military, naval, or air service. 38 U.S.C. §§ 1110, 1131. That a disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

For veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including organic disease of the nervous system, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C. § § 1101, 1112, 1113, 1137; 38 C.F.R. § § 3.307, 3.309. 

To establish a right to compensation for a present disability on a direct basis, a Veteran must show: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. 38 C.F.R. § 3.303 (a); see also Davidson v. Shinseki, 581 F.3d 1313, 1315-16 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

The Board notes that the threshold for normal hearing is from 0 to 20 decibels. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). Hearing loss disability claims are governed by 38 C.F.R. § 3.385. This regulation provides hearing loss is a disability when the auditory threshold in any of the frequencies of 500, 1000, 2000, 3000, or 4000 Hertz (Hz) is 40 decibels (dB) or greater. 38 C.F.R. § 3.385. Alternatively, a hearing loss disability can be established by auditory thresholds for at least three of those frequencies at 26 decibels or greater or by speech recognition scores under the Maryland CNC Test at less than 94 percent. 38 C.F.R. § 3.385.

The Veteran contends that his current left ear hearing loss disability is related to in-service noise exposure, or alternatively, his service-connected right ear hearing loss. Notably, VA has conceded in-service noise exposure. See Rating Decision dated March 2008.

Prior to entrance into service, a January 1972 Report of Medical Examination included a normal examination of the ears and normal audiometric findings in all frequencies in each ear. A contemporaneous Report of Medical History included the Veteran's denial of a history of ear trouble or hearing loss. Upon discharge, a May 1974 Report of Medical Examination included a normal examination of the ears and audiometric testing did not show a hearing loss disability for VA purposes in the left ear. A contemporaneous Report of Medical History included the Veteran's denial of a history of ear trouble or hearing loss.

In an August 2000 Medical Prescreening Form and contemporaneous Report of Medical History, the Veteran denied experiencing hearing loss. An August 2000 Report of Medical Examination included a normal examination of the ears; audiometric testing did not show a hearing loss disability for VA purposes in the left ear.

In an August 2002 audiogram, the Veteran did not endorse a hearing loss disability for VA purposes in the left ear. Upon discharge, the Veteran denied hearing loss. See Report of Medical History dated August 27, 2002.

Upon discharge from National Guard service, the Veteran was afforded an examination, at which time he endorsed clinically normal ears. He also endorsed normal hearing upon audiogram testing and denied hearing loss. See Report of Medical Examination and Report of Medical History dated October 21, 2005.

At the December 2007 VA examination, the Veteran's left ear pure tone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
LEFT
5
10
15
15
15

Speech audiometry revealed speech recognition ability of 96 percent in left ear; the Veteran did not endorse a hearing loss disability in the left ear for VA purposes.


At the October 2008 VA examination, the Veteran's left ear pure tone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
LEFT
10
20
15
15
15

Speech audiometry revealed speech recognition ability of 100 percent in left ear; the Veteran did not endorse a hearing loss disability in the left ear for VA purposes.

Most recently, the Veteran was afforded a VA examination in November 2015. At that time, the Veteran's left ear pure tone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
LEFT
20
20
30
35
40

Speech audiometry revealed speech recognition ability of 94 percent in left ear. The clinician diagnosed sensorineural hearing loss of the left ear and opined that the hearing loss was less likely as not proximately due to or the result of his right ear hearing loss. The clinician reasoned that hearing loss in one ear does not cause hearing loss in the other ear. The clinician also noted that the Veteran's left ear hearing was normal as recently as 2008. Ultimately, the clinician attributed the left ear hearing loss to aging and normal progression.

Subsequently, in January 2017, an addendum opinion was sought to address the Veteran's contentions of in-service noise exposure and direct service connection. Upon review of the record, the clinician found that the Veteran's left ear hearing loss was less likely than not caused by or the result of military service. In so finding, the clinician noted that the Veteran first endorsed mild hearing loss of the left ear in February 2013, 11 years after his last discharge from active service. The clinician cited medical literature from the Institute of Medicine in support of the assertion that hearing loss from noise injuries occurs immediately following exposure. Based on such literature, the clinician reported that there was no scientific basis to conclude that permanent hearing loss directly attributable to noise exposure would develop long after such noise exposure. Rather, the clinician found that the Veteran's left ear hearing loss disability was more likely due to normal progression and aging.

Upon consideration of the evidence of record, the Board finds that service connection for a left ear hearing loss disability is not warranted. In so finding, the Board finds that the November 2015 examination opinion and January 2017 addendum opinion to be of significant probative value. Both opinions were rendered after review of the claims file and upon consideration of the Veteran's medical history. The negative nexus opinions were based on the Veteran's normal hearing acuity upon separation from service, the lack of a left ear hearing loss disability for over a decade after discharge from service, and the lack of medical evidence supporting a finding of delayed onset hearing loss. The examiners' conclusions were supported by medical principles and literature. Consequently, the Board finds the negative nexus opinions addressing direct and secondary service connection to be the most probative evidence of record as to etiology.

The Board is aware of the provisions of 38 C.F.R. § 3.303(b), relating to chronicity and continuity of symptomatology in establishing service connection and that such provisions apply to those chronic conditions, such as hearing loss, specifically listed in 3.309(a). See Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed. Cir. 2013). However, neither hearing loss nor an organic disease of the nervous system was noted during service. As outlined above, the medical evidence does not show hearing loss until multiple decades after the Veteran's separation from service. He did not have a hearing loss on separation from service and, indeed, he explicitly denied hearing loss on separation from service. There is no demonstrable hearing loss disability until decades after separation from service. Moreover, the Veteran has not explicitly reported a continuity of decreased hearing acuity from service. He did not have characteristic manifestations of the pathology during that time frame. Rather, when tested, the findings were normal and he denied pertinent pathology. Therefore, the evidence is against a finding of continuity of symptomatology for the Veteran's left ear hearing loss dating back to his service.

While the Veteran is competent to report a continuity of symptomatology, a hearing loss disability for VA purposes is based on whether the level of hearing acuity at multiple frequencies meets the criteria of 38 C.F.R. § 3.385. In light of the normal audiogram testing on separation that occurred after the Veteran's in-service noise exposure and his explicit denial of hearing loss at that time, the Board does not find that lay reports of a continuity of symptomatology are credible in light of the mechanical nature of determining a hearing loss disability for VA purposes. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (explaining in footnote 4 that a veteran is competent to provide a diagnosis of a simple condition such as a broken leg, but not competent to provide evidence as to more complex medical questions).

As to the Veteran's general contentions that his left ear hearing loss disability was incurred in or was otherwise related to his service, given his lack of demonstrated medical expertise, the Board finds that the opinion and subsequent addendum of the VA audiologist to be the most probative and credible evidence of record as to the relationship between the Veteran's left ear hearing loss disability and his service. Although the Veteran may be competent to report decreased hearing acuity, such lay evidence is far less reliable than the objective testing prepared by skilled professionals. As such, the Board is of the opinion that the VA medical opinion ultimately outweighs the Veteran's contentions as to etiology. Layno v. Brown, 6 Vet. App. 465 (1994).

In summary, the Board finds the VA examination report of significantly greater probative value than the lay contentions of record. The Veteran explicitly denied a history of hearing loss prior to separation from service and audiometric findings at that time were normal. The Veteran reported onset of hearing loss symptoms multiple years after separation from service. To the extent that his contentions can be read as implicitly raising a continuity of decreased hearing acuity from service, due to the mechanical nature of determining a hearing loss disability for VA purposes and his normal audiogram on separation, the Board affords the VA examiner's opinion greater weight. In light of the evidence, the Board concludes that the preponderance of the credible evidence is against the claim, and that service connection for bilateral hearing loss is not warranted. As the preponderance of the evidence is against the claim, the benefit-of-the-doubt rule does not apply, and the claim must be denied. See generally Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F.3d 1361 (Fed Cir. 2001).


Left Heel and Left Shoulder

The Veteran has appealed the denial of service connection for left heel and left shoulder abnormalities, attributing the disorders to the rigors of service. He is competent to report that he experienced pain during service. However, the service records were silent as to left heel and left shoulder abnormalities. Rather, the 1974 separation examination disclosed that the upper extremities, lower extremities and feet were normal. In addition, he denied pertinent pathology at that time. Although the range of motion of the left shoulder was reported during service, this was to provide a contrast to the complaints involving the right shoulder. Furthermore, when examined in October 2005, the upper and lower extremities were described as normal. 

Although competent to report a history, we conclude that the service records disclosing no pathology of the left upper extremity and the left heel are far more credible and more probative than his remote statements advanced in support of this claim. Rather, the most probative evidence establishes remote onsets and there is no reliable evidence linking the remote onsets to in-service events. Furthermore, there is no competent evidence linking left shoulder pathology to the right shoulder, to include the allegation of overuse. 38 C.F.R. § 3.310 (2017).



ORDER

Entitlement to service connection for a left ear hearing loss disability is denied.

Entitlement to service connection for a left shoulder disorder is denied.

Entitlement to service connection for a right shoulder disorder is denied.




______________________________________________
H. N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs